# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Keith F. Bell, Ph.D. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: 2:18-cv-00961 |
| v. | ) | |
| | ) | Judge Edmund A. Sargus |
| Worthington City School District, | ) | |
| | ) | Magistrate Judge Kimberly Jolson |
| Defendant. | ) | |

**Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

STATEMENT OF UNDISPUTED FACTS............................................................1

ARGUMENT......................................................................................................3

I.     STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT..........3

II.    DEFENDANT HAS INFRINGED DR. BELL'S COPYRIGHT............................3

III.   ALTERNATIVELY, DEFENDANT IS CONTRIBUTORILY LIABLE FOR THE INFRINGEMENTS OF DR. BELL'S WORKS....................................................7

IV.   DEFENDANT'S ACTIONS WERE WILLFUL..............................................7

V.    DEFENDANT DISTRIBUTED UNAUTHORIZED COPIES OF THE WIN PASSAGE WITH ACTUAL AND/OR CONSTRUCTIVE NOTICE THAT THE AUTHORSHIP AND COPYRIGHT NOTICE INFORMATION HAD BEEN REMOVED OR ALTERED WITHOUT DR. BELL'S PERMISSION....................9

VI.   DEFENDANT IS NOT EXCEPTED FROM LIABILITY UNDER THE DOCTRINE OF FAIR USE.......................................................................11

VII.  DEFENDANT IS NOT EXCEPTED FROM LIABILITY UNDER THE DOCTRINE OF FAIR USE.......................................................................11

VIII. DEFENDANT IS NOT AN INNOCENT INFRINGER......................................15

IX.   DR. BELL IS ENTITLED TO STATUTORY DAMAGES....................................16

X.    DR. BELL IS ENTITLED TO ATTORNEYS' FEES AND COSTS.......................17

CONCLUSION..................................................................................................17

**Cases**

A&M Records v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001)     14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)     3

Arclightz & Films Pvt. Ltd. v. Video Palace Inc., 303 F.Supp.2d 356 (S.D.N.Y. 2003)     8

Audi AG v. D'Amato, 469 F.3d 534 (6th Cir. 2006)     10, 11

Bell v. Moawad Grp., LLC, 326 F. Supp. 3d 918 (D. Ariz. 2018)     6

Blackmore v. Kalamazoo County, 390 F.3d 890 (6th Cir. 2004)     3

BMG Music v. Gonzalez, 430 F.3d 888 (7th Cir. 2005)     16

Bourne Co. v. Speeks, 670 F. Supp. 777 (E.D. Tenn. 1987)     12

Bridge Publications, Inc. v. Vien, 827 F. Supp. 629 (S.D. Cal. 1993)     13

Brocade Comme'ns Sys., Inc. v. A10 Networks, Inc., No. C 10-3428 PSG, 2013 WL 831528 (N.D.

    Cal. Jan. 10, 2013)     14

Calibrated Success, Inc. v. Charters, 72 F.Supp. 3d 763 (E.D. Mich. 2014)     11

Campbell v. Acuff Rose Music, Inc., 510 U.S. 569 (1994)     12

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)     3

Design Basics, LLC v. Landmark Communities, Inc., No. 1:17-CV-449, 2019 WL 3944437 (S.D.

    Ohio Aug. 21, 2019)     9

Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394 (9th Cir. 1997)     13

Elvis Presley Enters. v. Passport Video, 349 F.3d 622 (9th Cir. 2003)     14

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)     4

Flava Works, Inc. v. Gunter, 689 F.3d 754 (7th Cir. 2012)     7

Fodor v. Los Angeles Unified Sch. Dist., No. CV 12-8090 DMG (CWX), 2014 WL 12235424 (C.D.

    Cal. June 3, 2014)     13

_Free Speech Sys., LLC v. Menzel_, No. 19-CV-00711-WHO, 2019 WL 2515579 (N.D. Cal. June 18, 2019)     6

_Gershwin Pub. Corp. v. Columbia Artists Management, Inc._, 443 F.2d 1159 (2d Cir 1971)     7

_Goldman v. Breitbart News Network, LLC_, 302 F. Supp. 3d 585 (S.D.N.Y. 2018)     6

_Harper & Row Publishers, Inc. v. Nation Enterprises_, 471 U.S. 539 (1985)     13, 15

_Hicks v. Baines_, 593 F.3d 159 (2d Cir. 2010)     3

_Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc._, 58 F.3d 1093 (6th Cir. 1995)     4

_In re International Flavors & Fragrances, Inc._, 183 F.3d 1361 (Fed.Cir.1999)     16

_Island Software & Computer Serv., Inc. v. Microsoft Corp._, 413 F.3d 257 (2d Cir. 2005)     8

_Knight Capital Partners Corporation v. Henkel AG & Co., KGaA_, 930 F.3d 775 (6th Cir. 2019)     3

_Leader's Inst., LLC v. Jackson_, No. 3:14-CV-3572-B, 2017 WL 5629514 (N.D. Tex. Nov. 22, 2017) 6

_Lexmark Int'l v. Static Control Components, Inc._, 387 F.3d 522 (6th Cir. 2004)     4

_Live Face on Web, LLC v. Smart Move Search, Inc._, No. CV 15-4198 (JHR/AMD), 2017 WL 1064664 (D. N.J. Mar. 21, 2017)     6

_Louis Vuitton Malletier & Oakley, Inc. v. Veit_, 211 F.Supp.2d 567 (E.D. Pa. 2002)     9

_Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc._, 658 F.3d 936 (9th Cir. 2011)     7

_Matthew Bender & Co. v. West Publ'g Co._, 158 F.3d 693 (2d Cir. 1998)     7

_Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd._, 545 U.S. 913 (2005)     7

_Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A._, 623 F.3d 440 (7th Cir. 2010)     16

_Monge v. Maya Magazines, Inc._, 688 F.3d 1164 (9th Cir. 2012)     12, 13

_N. Jersey Media Grp., Inc. v. Pirro_, 74 F. Supp. 3d 605 (S.D.N.Y. 2015)     12

_Nestle USA, Inc. v. Gunther Grant, Inc._, No. CV-13-6754 MMM (ASX), 2014 WL 12558008 (C.D. Cal. May 13, 2014)     9

Norse v. Henry Holt and Co., 991 F.2d 563 (9th Cir. 1993) ......................................... 14

Perfect 10 v. Google, Inc., 416 F.Supp.2d 828 (C.D. Cal. 2006) .................................... 6

Reed v. Ezelle Inv. Properties Inc., 353 F. Supp. 3d 1025 (D. Or. 2018) ...................... 16

Salinger v. Random House, Inc., 811 F.2d 90 (2d Cir. 1987) ........................................ 13

Shell v. Lautenschlager, No. 1:15-cv-1757, 2017 WL 4919206 (N.D. Ohio Oct. 31, 2017) ...... 10

Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417 (1984) ................... 13, 14

Stromback v. New Line Cinema, 384 F.3d 283 (6th Cir. 2004) ....................................... 4

Twin Peaks Productions, Inc. v. Publications Intern., Ltd., 996 F.2d 1366 (2nd Cir. 1993) ...... 17

Vietnam Reform Party v. Viet Tan - Vietnam Reform Party, No. 17-CV-00291-HSG, 2019 WL
    4015813 (N.D. Cal. Aug. 26, 2019) ........................................................ 16

Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110 (9th Cir. 2000) ... 12, 13

Zinganything, LLC v. Import Store, 158 F.Supp. 3d 668 (N.D. Ohio 2016) ...................... 10

Zomba Enterprises, Inc. v. Panorama Records, Inc., 491 F.3d 574 (6th Cir. 2007) ...... 16, 17

**Statutes**

15 U.S.C. § 1072 ....................................................................................... 8, 16

15 U.S.C. § 1125 .......................................................................................... 10

17 U.S.C. § 101 ........................................................................................ 4, 5

17 U.S.C. § 106 ..................................................................................... 4, 5, 6

17 U.S.C. § 107 ........................................................................................... 11

17 U.S.C. § 1202 ............................................................................... 9, 10, 18

17 U.S.C. § 401 ........................................................................................... 16

17 U.S.C. § 410 ............................................................................................. 4

17 U.S.C. § 501 .................................................................................... 3, 18

17 U.S.C. § 504 ...............................................................................................................15, 16, 17

17 U.S.C. § 505 .................................................................................................................... 17, 18

**Other Authorities**

J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS, § 3.1 (4th ed.2004) .....................10

1976 U.S.C.C.A.N. 5659 .....................................................................................................................4

2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.20[A], at 8-636 to -637 (2017) ........5

3 Nimmer on Copyright, § 13.05(F)(5) at 13-84 (1981) ...........................................................15

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[B][1] (Matthew Bender rev. ed.2011)......................................................................................................................................12

H. Comm. On the Judiciary, 89th Cong., Copyright Law Revision Part 6: Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law: 1965 Revision Bill, at 25 (Comm. Print. 1965).............................................................................................5

H.R. REP. 94-1476, 64.................................................................................................... 4, 5

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................ 3, 17

## Introduction

This copyright infringement and trademark action was commenced by Plaintiff Dr. Keith F. Bell, Ph.D. (hereinafter, "Dr. Bell") against Defendant Worthington City School District (hereinafter "Defendant") because Defendant, without authorization, publicly distributed and displayed Dr. Bell's protected work and utilized Dr. Bell's registered trademark to promote Defendant's organization across social media and on Defendant's website. This motion seeks summary judgment on the issue of Defendant's liability under the U.S. Copyright Act (17 U.S.C. § 504, et seq.) and the Lanham Act (15 U.S.C. §1114), on damages recoverable by Dr. Bell in light of Defendant's infringements, and on Defendant's ineffective defenses including that of fair use.

## Statement of Undisputed Facts

### Dr. Bell's Copyright and Trademark

Dr. Bell is an internationally- recognized sports psychology and performance consultant, as well as an accomplished athlete, coach, and author. Decl. of Adam E. Urbanczyk, Ex. ("FACTS") 01. To these ends, Dr. Bell has secured a U.S. copyright registration for his work *Winning Isn't Normal* (TX 2-672-644) and a U.S. federal trademark registration, on the Principal Register, for the word mark WINNING ISN'T NORMAL (Reg. No. 4,630,749) covering "Printed matter, namely, non-fiction publications, namely, books, booklets, pamphlets, articles, manuals and posters in the field of sports, fitness, and competitive performance and psychology" in IC 016. [FACTS02]. Central to the *Winning Isn't Normal* work is a particularly inspirational passage on Page 8 of the work, commonly referred to as the "WIN Passage" for which Dr. Bell has secured a separate copyright registration (TX 8-503-571) [FACTS03]. Dr. Bell offers his copyright-protected works - including the *Winning Isn't Normal* book and the WIN Passage separately - and other products bearing the WINNING ISN'T NORMAL mark on his online storefront. [FACTS04].

**Defendant's Organization**

Defendant is a school district and political subdivision of the State of Ohio that operates or sponsors the Worthington Kilbourne High School Boys Basketball webpage (www.wolvesboysbasketball.com). [FACTS05, ¶ 4]; [FACTS06, ¶ 4]; [FACTS07]. Through its webpage, Defendant promotes information on its fundraisers and instructions on linking a Kroger Plus Rewards card to benefit Defendant. [FACTS07]. Defendant's employee, Sean Luzader, operates a Twitter account, @SeanLuzader, linked to and promotional of his role as a basketball coach. [FACTS08, ¶ I.(4)] [FACTS09].

**Defendant's Infringing Acts**

Caught My Eye Photography of Columbus (hereinafter referred to as "CME") posted a textual representation of the WIN Passage on its website, www.caughtmyeyephotographyofcolumbus.com, without authorization and with false attribution. [FACTS10]. This webpage contained the heading "Winning ISN'T Normal." Id. After this page was created, Defendant added a link to the infringing CME webpage on its webpage, with the text label, "2015-16 Basketball Highlight Video." [FACTS07]. Activating the link sends the user to CME's infringing post, which includes the WIN Passage. [FACTS10].

Defendant's employee, Coach Tom Souder, read the WIN Passage to the basketball team and printed out the passage and hung it in the locker room. [FACTS11, pages 3-4]. Another employee of Defendant, Coach Sean Luzader, retweeted an image of the WIN Passage on or about August 7, 2017. [FACTS09]. The image did not attribute the copyrighted passage and trademark to Dr. Bell. Id. At the time, the post was publicly available, and the Twitter account had 323 followers. Id.

**Argument**

I.     **Standard of Review on Motion for Summary Judgment**

Rule 56 provides that where a movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the Court shall grant summary judgment. Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When making a determination on summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004). However, once the moving party discharges its burden, the non-moving party must set out specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); Celotex. "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and to avoid summary judgment a non-moving party "must show more than the mere existence of a scintilla of evidence." Knight Capital Partners Corporation v. Henkel AG & Co., KGaA, 930 F.3d 775, 779 (6th Cir. 2019), *citing*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

II.     **Defendant has infringed Dr. Bell's copyright.**

Defendant has, without authorization and for Defendant's benefit, displayed Dr. Bell's protected WIN Passage to Defendant's audience in person and across the internet and social media. To establish a claim for copyright infringement, a plaintiff need only show that: (i) it owns a valid copyright in the work at issue; and (ii) the defendant encroached upon the plaintiff's exclusive rights under the Copyright Act. 17 U.S.C. § 501; Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th

Cir. 2004), *quoting*, Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

**a.  Dr. Bell owns a valid copyright for the work at issue.**

There is no dispute that Dr. Bell has secured a copyright registration for the work *Winning Isn't Normal* and the WIN Passage.  [FACTS02]; [FACTS03].  A certificate of copyright registration of a work: (i) constitutes *prima facie* evidence of the validity of a copyright and the facts stated in the certificate of registration; and (ii) raises a presumption of ownership. 17 U.S.C. § 410(c); *See also*, Lexmark Int'l v. Static Control Components, Inc., 387 F.3d 522, 534 (6th Cir. 2004); Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1095 (6th Cir. 1995).  Thus, Defendant has the burden to show why the WIN Passage is not copyrightable. Hi-Tech, 58 F.3d at 1095.  Dr. Bell has established the originality and authorship of the WIN Passage, as well as Dr. Bell's compliance with registration formalities for the WIN Passage and ownership thereof.  There is no genuine issue of material fact outstanding as to whether Dr. Bell satisfies the first prong.

**b.  Defendant has violated Dr. Bell's exclusive right of display and distribution.**

Historically, the Copyright Act of 1976 (the "Act") was enacted in response to changes in technology and gave to copyright owners the right to, among other things, "display the copyrighted work publicly."  17 U.S.C. § 106(5).  The Act defines the term "display" with respect to a work as showing "a copy of it, either directly or by means of a film, slide, television image, *or any other device or process.*" 17 U.S.C. § 101 (emphasis added).  Similarly, the Act defines displaying a work "publicly" as transmitting or communicating "a…display of the work to…the public, by means of *any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.*  Id. (emphasis added).

Congress intended to include in the public display right "[e]ach and every method by which the images…comprising a…display are picked up and conveyed."  H.R. REP. 94-1476, 64, *reprinted in* 1976 U.S.C.C.A.N. 5659.  Thus, "the display of a visual image of a copyrighted work would be an

infringement if the image were transmitted by any method (by closed or open circuit television, for example, or by a computer system) from one place to members of the public located elsewhere." Id., at 80.

The Register of Copyrights testified at hearings which preceded the passage of the Act that "the definition [of the display right] is intended to cover every transmission, retransmission, or other communication of [the image]," beyond the originating source that might store the image, but including "any other transmitter who picks up his signals and passes them on." H. Comm. On the Judiciary, 89th Cong., Copyright Law Revision Part 6: Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law: 1965 Revision Bill, at 25 (Comm. Print. 1965). One half a century later, his warning that information storage and retrieval devices…when linked together by communication satellites or other means…could eventually provide libraries and individuals throughout the world with access to a single copy of a work by transmission of electronic images appears especially prescient. Id., at 20; 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.20[A], at 8-636 to -637 (2017) (observing that one of the "important function[s] of the display right" is its application to the electronic transmission of works which do "not implicate the reproduction right").

By the Act's plain language, the Defendant need not have obtained or reproduced its own copy of the WIN Passage on Defendant's own website or server in order to "display" it, as long as the Defendant caused (*e.g.*, through transmission or communication) images of the WIN Passage, whether directly or indirectly and by any "device or process," to be received by the public. 17 U.S.C. §§ 101, 106; H.R. REP. 94-1476 at 80.

This is precisely, without dispute, what happened. Dr. Bell establishes Defendant's violation of his exclusive display right through direct evidence that Defendant's employee posted a nearly-identical copy of the WIN Passage to his public Twitter feed. [FACTS09]. *See*, Leader's Inst., LLC v.

Jackson, No. 3:14-CV-3572-B, 2017 WL 5629514, at *11 (N.D. Tex. Nov. 22, 2017) ("the person need not possess the display…For example, a person that went into a movie theater and used a video camera connected to the internet to broadcast a movie to the public would clearly be committing copyright infringement even though the person did not herself have a copy of the movie."). This is outside the context of search engine results, obviating the "server test" generally established in Perfect 10 v. Google, Inc., 416 F.Supp.2d 828 (C.D. Cal. 2006). See, Free Speech Sys., LLC v. Menzel, No. 19-CV-00711-WHO, 2019 WL 2515579 (N.D. Cal. June 18, 2019) (denying motion to dismiss direct infringement claim involving "wholesale posting of copyrighted material on a news site" as distinguishable from Perfect 10); Goldman v. Breitbart News Network, LLC, 302 F. Supp. 3d 585 (S.D.N.Y. 2018) (holding media organizations' actions in embedding messages on their websites from social media platforms containing copyrighted photograph constituted "display" of work under Copyright Act); Bell v. Moawad Grp., LLC, 326 F. Supp. 3d 918, 924 (D. Ariz. 2018) (second prong of copyright infringement test established where defendants admitted that they publicly posted the WIN Passage on their social media accounts); See also, Live Face on Web, LLC v. Smart Move Search, Inc., No. CV 15-4198 (JHR/AMD), 2017 WL 1064664, at *2 (D. N.J. Mar. 21, 2017) (denying motion to dismiss direct infringement of distribution right where plaintiff alleged that defendant caused plaintiff's copyright software to be displayed to website users by embedded HTML script tag automatically saving the software to the users' "web browser into cache, and/or a hard drive(s), and loaded into computer memory and/or RAM").

Also, Defendant's employee, without authorization, read the WIN Passage aloud to the basketball team and printed and hung the WIN Passage in the basketball team's locker room. [FACTS11]. Those acts also violate Dr. Bell's right of public performance and distribution. 17 U.S.C. § 106(5). Dr. Bell has established that Defendant encroached upon his exclusive rights under

the Copyright Act and, accordingly, that Defendant is liable to Dr. Bell for infringing his copyright in the *Winning Isn't Normal* work and the WIN Passage.

**III.     Alternatively, Defendant is contributorily liable for the infringements of Dr. Bell's works.**

A defendant contributorily infringes copyright protections "by intentionally inducing or encouraging direct infringement." <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005), *citing*, <u>Gershwin Pub. Corp. v. Columbia Artists Management, Inc.</u>, 443 F.2d 1159, 1162 (2d Cir 1971). Activity that "encourages or assists" direct infringement can form the basis of contributory liability. <u>Flava Works, Inc. v. Gunter</u>, 689 F.3d 754, 757 (7th Cir. 2012), *quoting*, <u>Matthew Bender & Co. v. West Publ'g Co.</u>, 158 F.3d 693, 706 (2d Cir. 1998)

It is undisputed that the textual representation of the WIN Passage as it appeared on the CME website was not authorized. [FACTS10]. Defendant encouraged its audience to view CME's infringing webpage by providing a link on Defendant's website, whereby the infringing copy of the WIN Passage would be display to the CME website's visitors. Defendant had actual notice of Dr. Bell's copyright claim several weeks prior to Coach Luzader's Twitter post of the WIN Passage, associated with Defendant. [FACTS09]; [FACTS12]. Defendant certainly had the ability to stop or limit its employees from infringing on Dr. Bell's copyright protections. There is no genuine issue of material fact with respect to Defendant liability as a contributory infringer of Dr. Bell's works.

**IV.     Defendant's actions were willful.**

Dr. Bell establishes that Defendant's violation of his exclusive rights under the U.S. Copyright Act were willful. To prove willfulness, a plaintiff must show that: (i) the defendant was actually aware of the infringing activity; or (ii) the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights. <u>Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.</u>, 658 F.3d 936, 944 (9th Cir. 2011), *quoting*, <u>Island Software & Computer</u>

Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005); *see also*, Arclightz & Films Pvt. Ltd. v. Video Palace Inc., 303 F.Supp.2d 356, 361-62 (S.D.N.Y. 2003) ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights.").

Dr. Bell has been a fixture of the U.S. and international swimming community for decades, writing 10 books which have been translated into several languages and distributed internationally. [FACTS01]. A basic Google search for "winning isn't normal" produces results identifying Amazon.com listings for Dr. Bell's book, Dr. Bell's own website, and a Google-autogenerated prompt to review Dr. Bell's book Winning Isn't Normal. [FACTS13]. That Defendant, through its employee, in 2017, would obtain an un-sourced image of the WIN Passage that clearly identifies its title as WINNING ISN'T NORMAL and send the image out through that employee's Twitter account, without bothering to determine the image's provenance is at least reckless, and experts and observers have been cautioning against this behavior for literally decades. [FACTS14]. The Twitter post contains two reproductions of Dr. Bell's WINNING ISN'T NORMAL mark which is covered under U.S. Reg. No. 4,630,749. [FACTS15]. This registration put Defendant on constructive notice that Dr. Bell was the owner of at least the mark, begging its association to the WIN Passage. 15 U.S.C. § 1072. Further, despite seeing an attribution to Dr. Bell, Defendant's employee posted the WIN Passage in the basketball team's locker room without obtaining any authorization or license, and Defendant provided a link to CME's infringing webpage. [FACTS11]; [FACTS07].

Lastly, Defendant was appraised of the dispute by July 14, 2017, and yet did not prevent its employee from posting the WIN Passage on the Twitter account on or about August 7, 2017. [FACTS12]; [FACTS09]. Thus, Defendant was actually aware of its infringing activity for several weeks before the Twitter post was made. Defendant's "continued infringement after notice of its

wrongdoing is probative of willfulness." Nestle USA, Inc. v. Gunther Grant, Inc., No. CV-13-6754

MMM (ASX), 2014 WL 12558008, at *9 (C.D. Cal. May 13, 2014); Louis Vuitton Malletier &

Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) ("Willfulness can be inferred by the

fact that a defendant continued infringing behavior after being given notice."). Dr. Bell has

established, and there is no genuine issue of material fact with respect to, the willfulness of

Defendant's conduct.

**V.    Defendant distributed unauthorized copies of the WIN Passage with actual
       and/or constructive notice that the authorship and copyright notice information
       had been removed or altered without Dr. Bell's permission.**

Defendant's employees both displayed the WIN Passage without the copyright notice

information. Additionally, the Twitter post contained no authorship information at all. Under 17

U.S.C. § 1202(b), no person shall, without the authority of the copyright owner or the law: (1)

intentionally remove or alter any copyright management information, . . . or (3) distribute, import for

distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright

management information has been removed or altered without authority of the copyright owner or

the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds

to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

The following subsection defines "copyright management information" to include the name of the

author and the title and other information identifying the work, including the information set forth

on a notice of copyright. 17 U.S.C. § 1202(c).

"A cause of action under Section 1202 potentially lies whenever…[copyright management

information] is falsified or removed, regardless of the form in which that information is conveyed."

Design Basics, LLC v. Landmark Communities, Inc., No. 1:17-CV-449, 2019 WL 3944437, at *12

(S.D. Ohio Aug. 21, 2019), *quoting*, Shell v. Lautenschlager, No. 1:15-cv-1757, 2017 WL 4919206, at

*9 (N.D. Ohio Oct. 31, 2017) (alterations in original). The WIN Passage is clearly written by an author, and yet Plaintiff's name was removed from the copy appearing in the Twitter post. [FACTS09]. Further, the image containing the WIN Passage and linked to by Defendant falsely attributes the WIN Passage to Defendant's employee Coach Tom Souder. [FACTS07]; [FACTS10]. There is no genuine issue of material fact concerning Defendant's violation of Section 1202 by distributing and displaying copies of the WIN Passage with redacted and/or false copyright management information.

## VI. Defendant has violated Dr. Bell's trademark rights and has violated Ohio common law regarding trademarks and unfair competition.

Under both common law and federal law, "a trademark is a designation used 'to identify and distinguish' the goods of a person." Audi AG v. D'Amato, 469 F.3d 534, 542 (6th Cir. 2006), *citing* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS, § 3.1 (4th ed.2004). Under the Lanham Act, the likelihood of confusion test is used for both trademark infringement and unfair competition. Zinganything, LLC v. Import Store, 158 F.Supp. 3d 668, 674 (N.D. Ohio 2016), *citing* Audi AG, 469 F.3d at 542. This is also the analysis under Ohio law. Id.

Pursuant to 15 U.S.C. § 1125(a)(1), "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." In the Sixth Circuit, to determine whether there is a likelihood of confusion, there are eight factors that should be considered: (1) strength of plaintiff's

10

mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5)

marketing of channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark;

and (8) likelihood of expansion in selecting the mark.  Audi AG, 469 F.3d at 542-43.  These factors

support Dr. Bell's claim.  Defendant posted and displayed Dr. Bell's trademark in connection with

the operation of their basketball program. [FACTS09]; [FACTS11].  This is in direct competition

with Dr. Bell's services and materials covered by his trademark, including books, booklets,

pamphlets, articles, manuals and posters in the field of sports, fitness, and competitive performance

and psychology.  [FACTS01]; [FACTS04]; [FACTS15].  Members of the public and the basketball

team who viewed these displays were likely to have been confused, believing that Dr. Bell had

authorized them.  This confusion is compounded by, for example, by Defendant's attribution of

Plaintiff's WIN Passage to Defendant's employee, Coach Souder and not Plaintiff.  [FACTS10].

There is no genuine issue of material fact with respect to Defendant's liability for trademark

infringement and unfair competition under Ohio law.

**VII.    Defendant is not excepted from liability under the doctrine of fair use.**

Fair use is an exception to liability for copyright infringement and an affirmative defense that

presumes the copying has occurred.  When evaluating a fair use defense, the Court is directed to

evaluate the following non-exclusive factors: (1) the purpose and character of the use, including

whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature

of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the

copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of

the copyrighted work.  Calibrated Success, Inc. v. Charters, 72 F.Supp. 3d 763,  770-71 (E.D. Mich.

2014), *citing*, 17 U.S.C. § 107.

**a.    The purpose of Defendant's utilization of the WIN Passage does not support fair**
**use.**

A primary fair use inquiry is whether a work's use "'supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." Campbell v. Acuff Rose Music, Inc., 510 U.S. 569, 579 (1994) (internal alteration and quotation omitted). "[W]here the 'use is for the same intrinsic purpose as [the copyright holder's]…such use seriously weakens a claimed fair use." Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1117 (9th Cir. 2000) (internal quotation omitted); See also, N. Jersey Media Grp., Inc. v. Pirro, 74 F. Supp. 3d 605, 617 (S.D.N.Y. 2015) (observing that placing a known hashtag with copyrighted pictures is not a transformative use of the pictures).

Defendant, who like so many found the WIN Passage inspiring, twice displayed a near-verbatim copy of the WIN Passage, once on a poster, displaying it to the basketball team, and once as a Twitter post, distributing and displaying it to social media. A more mundane, yet legal and appropriate, approach to proliferating the inspiring WIN Passage to Defendant's audience and organization would have been to purchase copies of Dr. Bell's book which contain the WIN Passage, perhaps posters containing the same, or request a license. Defendant's municipal status does not insulate it from a finding of infringement, nor does its professed innocence. Campbell, 510 U.S. at 584; Monge v. Maya Magazines, Inc., 688 F.3d 1164, 1170 (9th Cir. 2012), quoting, 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.08[B][1] (Matthew Bender rev. ed.2011) (footnote omitted) ("the innocent intent of the defendant constitutes no defense to liability")); See, Bourne Co. v. Speeks, 670 F. Supp. 777, 779 (E.D. Tenn. 1987) (organization's occasional charitable focus did not vitiate commercial activity).

While Defendant may be a municipal organization, it remains certainly a *commercial* endeavor and provides information regarding fundraisers and other means to raise money through its website. "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the

monopoly privilege that belongs to the owner of the copyright." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451 (1984). This tends to weigh against a finding of fair use' because 'the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" Monge, 688 F.3d at 1176, *quoting*, Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 562 (1985).

b. **The nature of Dr. Bell's works weighs against a finding of fair use.**

The *Winning Isn't Normal* work, while not literary fiction, is Dr. Bell's creative and expressive observations of competition generally, a result of his many years as a successful swimmer and sports psychologist. The WIN Passage and broader *Winning Isn't Normal* work isn't purely functional, informational, or simply factual. *See,* Fodor v. Los Angeles Unified Sch. Dist., No. CV 12-8090 DMG (CWX), 2014 WL 12235424, at *13 (C.D. Cal. June 3, 2014) ("authors' manner of expression, analysis, structuring of material and marshaling of facts, choice of words, and emphasis give rise to protection here"). The second statutory factor turns on whether the work is informational or creative. Worldwide Church of God, 227 F.3d at 1118. While this factor is not the most significant factor in the fair use evaluation, this nevertheless weighs against a finding that Defendant's use was fair. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1402 (9th Cir. 1997); *See, e.g.*, Bridge Publications, Inc. v. Vien, 827 F. Supp. 629, 635 (S.D. Cal. 1993) (the nature of quasi-psychological Scientology courses weighed against finding of fair use).

c. **Defendant copied the heart of the *Winning Isn't Normal* work.**

When assessing the third fair use factor - the amount and substantiality of the portion of a copyrighted work that the Defendant copied - the court will look to see whether the heart of the copyrighted work is taken. Salinger v. Random House, Inc., 811 F.2d 90, 98-99 (2d Cir. 1987); *see also*, Harper & Row, 471 U.S. at 565 (ruling that taking 300 words from presidential memoirs was not fair use when copied words were "the heart of the book"). Defendant's displays were of the

WIN Passage in isolation from the rest of the *Winning Isn't Normal* book, and the Twitter post was without attribution. Dr. Bell is in the business of selling books and licensing his work, and Defendant's display of the WIN Passage was bereft of any association with Dr. Bell. Elvis Presley Enters. v. Passport Video, 349 F.3d 622, 630 (9th Cir. 2003);("Taking key portions extracts the most valuable part of Plaintiffs' copyrighted works."); *See, e.g.*, Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., No. C 10-3428 PSG, 2013 WL 831528, at *8 (N.D. Cal. Jan. 10, 2013) (copying 145 lines of necessary code among 10,000,000 was not *de minimis*). Moreover, the displays include the WIN Passage nearly verbatim and, in fact, somewhat maligned in poor formatting as a result of the image being a poorly-scanned photo of an excerpt with WIN Passage printed thereon. "Even a small taking may sometimes be actionable." Norse v. Henry Holt and Co., 991 F.2d 563, 566 (9th Cir. 1993) (reversing summary judgment granted to defendant who copied seven phrases from the plaintiff's letters that were copied in his book). The WIN Passage is a demonstrably important part of the *Winning Isn't Normal* work and Defendant's unauthorized copying thereof is, qualitatively significant.

   **d. Defendant's unauthorized display of the WIN Passage had a detrimental effect on the potential market for his work.**

   The fourth statutory factor will weigh against a finding of fair use if the plaintiff can show that if the challenged use "should become widespread, it would adversely affect the potential market for the copyrighted work." Sony Corp. of Am., 464 U.S. at 451. When an original work is made available on social media to thousands upon thousands without attribution and compensation, it has an instant and deleterious effect on the potential market for the work. *See*, A&M Records v. Napster, Inc., 239 F.3d 1004, 1019 (9th Cir. 2001) (affirming that defendant was unlikely to show fair use where use of the copyrighted work would make it "available to millions of other individuals."). Moreover, Defendant - which operates a sports team - directly usurped a substantial

function of Dr. Bell's work in the market which, particularly, includes those participating or interested in sports activities.

Defendant's infringing activity sufficiently offers Dr. Bell's work in a secondary way such that potential customers, having viewed and read the WIN Passage as posted by Defendant, will no longer be inclined to purchase Dr. Bell's book or other materials incorporating the *Winning Isn't Normal* book or WIN Passage. The cumulative effect of Defendant's public display of the heart of Dr. Bell's copyrighted work - the WIN Passage - must be considered when determining the harm Defendant caused to the market for Dr. Bell's works. 3 Nimmer on Copyright, § 13.05(F)(5) at 13-84 (1981) ("It is only when the general dissemination of an allegedly infringing work by all potential defendants, and without limitation as to the number of reproductions, and volume of users would still not adversely affect the plaintiff's potential market that a conclusion of fair use may be justified."). Defendant's infringing activity, were it to become widespread, would plainly have an adverse impact on the market for Dr. Bell's work, particularly with respect to the WIN Passage which Dr. Bell's separately sells. This is sufficient to negate Defendant's fair use defense. Harper & Row, 471 U.S. at 568 ("[T]o negate fair use one need only show that if the challenged use "should become widespread, it would adversely affect the potential market for the copyrighted work.") (internal quotations omitted). There is no genuine issue of material fact outstanding or preventing this Court from determining that all fair use factors weigh against a finding of fair use.

## VIII.  Defendant is not an innocent infringer.

To be an "innocent infringer" under the U.S. Copyright Act, a defendant must show he was "not aware and had no reason to believe that his…acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). However, information that Dr. Bell's copyright existed, readily discoverable, and publicly-available examples of Dr. Bell's *Winning Isn't Normal* book contain its notice of copyright. That Defendant could have learned of Dr. Bell's copyrights through a basic internet

search precludes a determination that Defendant was an innocent infringer.  *See, e.g.*, <u>Reed v. Ezelle</u> <u>Inv. Properties Inc.</u>, 353 F. Supp. 3d 1025, 1037 (D. Or. 2018); <u>BMG Music v. Gonzalez</u>, 430 F.3d 888, 892 (7th Cir. 2005); 17 U.S.C. § 401(d).

Likewise, Dr. Bell's trademark registration for WINNNG ISN'T NORMAL, registered on November 4, 2014, years before the date Defendant's infringing acts started, put Defendant on constructive notice of Dr. Bell's ownership of the mark, precluding an innocent infringement defense.  15 U.S.C. § 1072; <u>Vietnam Reform Party v. Viet Tan - Vietnam Reform Party</u>, No. 17-CV-00291-HSG, 2019 WL 4015813, at *4 (N.D. Cal. Aug. 26, 2019); <u>Mobile Anesthesiologists Chicago,</u> <u>LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.</u>, 623 F.3d 440, 446 (7th Cir. 2010), *citing*, <u>In</u> <u>re International Flavors & Fragrances, Inc.</u>, 183 F.3d 1361, 1367 (Fed.Cir.1999) (Section 22 of the Lanham Act "is intended to protect against users of the registrant's trademark who might otherwise raise a defense of innocent misappropriation").  There is no genuine issue of material fact concerning Defendant's inability to establish an innocent infringer defense to either Dr. Bell's copyright or trademark infringement claim.

## IX.   Dr. Bell is entitled to statutory damages.

At any time prior to entry to final judgment, a copyright infringement plaintiff is entitled to elect either actual damages pursuant to 17 U.S.C. § 504(b) or statutory damages pursuant to 17 U.S.C. § 504(c). *See*, <u>Zomba Enterprises, Inc. v. Panorama Records, Inc.</u>, 491 F.3d 574, 578 (6th Cir. 2007). Dr. Bell elects statutory damages against Defendant with respect to Dr. Bell's' copyright infringement claims.

The Copyright Act defines two tiers of statutory damages.  The first requires an award of not less than $750 nor more than $30,000 as to "all infringements" (whether willful or innocent). 17 U.S.C. § 504(c)(1).  The second level permits the Court to increase the award up to $150,000 for acts of willful infringement. *See*, 17 U.S.C. § 504(c)(2); <u>Zomba Enterprises,</u>, 491 F.3d at 578; <u>Twin Peaks</u>

Productions, Inc. v. Publications Intern., Ltd., 996 F.2d 1366, 1382 (2nd Cir. 1993).

The exact determination is within the Court's sound discretion. Id. As set forth above, Dr. Bell has established that Defendant's violations of Dr. Bell's exclusive rights under the Copyright Act were willful and thus the Court is empowered to, and should, award Dr. Bell statutory damages in the amount of $150,000 for Defendant's infringing of the *Winning Isn't Normal* work and WIN Passage. 17 U.S.C. § 504(c)(2).

**X.      Dr. Bell is entitled to attorneys' fees and costs.**

Pursuant to 17 U.S.C. § 505, the Court may, its discretion, award the prevailing party reasonable attorneys' fees and costs. In determining whether to grant attorneys' fees, the Court may consider: (i) the degree of success obtained by the prevailing party; (ii) frivolousness; (iii) motivation; (iv) objective unreasonableness in both the factual and legal arguments of the case; (v) the need in the particular circumstance to advance considerations of compensation and deterrence; and (vi) promotion of the Copyright Act's objectives. Zomba Enterprises., 491 F.3d at 589.

Here, Defendant simply copied Dr. Bell's protected work and displayed it for the world to see on the Internet. In doing so, Defendant diminished the value of Dr. Bell's property. There was, and is, no valid excuse offered for this conduct, nor is there any firm basis for Defendant to have contested its liability in this case. Defendant's position is patently unreasonable, and the need to deter similar conduct in the future warrants nothing less than a full award of attorney's fees to Dr. Bell.

**Conclusion**

For all of the foregoing reasons, because there are no material facts in dispute with respect to Defendant's liability and because Plaintiff Dr. Keith F. Bell, Ph.D. is entitled to judgment as a matter of law, summary judgment should be entered in favor of him and against Defendant pursuant to Fed. R. Civ. P. 56(a), including statutory damages pursuant to 17 U.S.C. § 504(c)(2), and attorney's

fees and costs pursuant to 17 U.S.C. § 505, and any such other and further relief as appropriate

under the circumstances.  In the alternative, Dr. Bell is entitled to partial summary judgment on the

issue of Defendant's liability under 17 U.S.C. § 501 and 17 U.S.C. § 1202.

Dated:          February 11, 2020

                                                    Respectfully submitted,


                                                    /s/Adam E. Urbanczyk
                                                    Adam E. Urbanczyk
                                                    AU LLC
                                                    564 W. Randolph St. 2nd Floor
                                                    Chicago, IL 60661
                                                    (312) 715-7312 (tel)
                                                    (312) 646-2501 (fax)
                                                    adamu@au-llc.com
                                                    IL Bar No. 6301067
                                                    (*pro hac vice pending*)

                                                    Christopher R Pettit (0069926)
                                                    Lane Alton & Horst
                                                    Two Miranova Place
                                                    Suite 220
                                                    Columbus, OH 43215
                                                    614-228-6885
                                                    cpettit@lanealton.com

                                                    Joseph Anthony Gerling (0022054)
                                                    Lane Alton & Horst
                                                    Two Miranova Place
                                                    Suite 220
                                                    Columbus, OH 43215-7052
                                                    614-228-6885
                                                    614-288-0146 (fax)
                                                    jgerling@lanealton.com